## STATE OF CONNECTICUT *v.* EDWIN MEJIAS, JR.
### (13871)

O'Connell, Foti and Spear, Js.

Argued March 26—officially released June 18, 1996

*Earle Giovanniello*, with whom, on the brief, was *Frank J. Riccio*, for the appellant (defendant).

*Richard F. Jacobson*, supervisory assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's attorney, and *Richard L. Palombo*, assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction rendered after a jury trial on charges of robbery in the first degree in violation of General Statutes §§ 53a-119 and 53a-134 (a) (4), and larceny in the first degree in violation of General Statutes §§ 53a-119 and 53a-122 (a) (2), and rendered after a plea of guilty to the charge of larceny in the third degree in violation of General Statutes §§ 53a-119 and 53a-124 (a) (1). The defendant claims that the trial court improperly (1) instructed the jury, and (2) denied his motion to withdraw his plea of guilty. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On the morning of August 8, 1992, the defendant, armed with a gun and accompanied by an accomplice, robbed a branch of the Connecticut National Bank located in Fairfield. Following the robbery, the two perpetrators sped off in a small white Datsun automobile, with the defendant seated on the passenger side. Shortly thereafter, the police, after responding to a dispatch regarding the bank robbery, located the described vehicle and pursued it until it stopped in the middle of the street. The defendant, who was then in the driver's seat, was the only person in the automobile.[1] After being stopped, the defendant fled on foot. The police chased and eventually apprehended the defendant. During the chase, the defendant pointed a gun at one of the police officers. After the police captured the defendant, they performed a search of the defendant's person and found a pair of latex gloves in his pocket. A subsequent search of the vehicle disclosed a screwdriver and revealed that the steering column had been tampered with, making it apparent that it was a stolen vehicle. An envelope found in the car tested positive for the chemical used in dye packs.[2] During the robbery, one of the perpetrators had taken a packet of money containing dye. The police later determined that the car from which the defendant had fled, was a stolen vehicle valued at $1300.

At the close of evidence, and after the defendant had rested, he requested, through counsel, to be permitted to change his plea to guilty to the charge of larceny in the third degree. Over the state's objection, the trial court allowed the defendant to plead guilty to the larceny of the motor vehicle. After accepting the plea, the

---

[1] There is no explanation in the trial court record or in the briefs as to when or where the defendant ceased being the passenger in the vehicle and became the driver and sole occupant of the automobile.

[2] During the trial, one of the bank employees testified that a dye pack is a packet of money containing a dye that explodes when removed from the bank.

court gave an initial instruction to the jury as follows: "During the course of the last recess, I have accepted a plea of guilty to the third count of the information, charging larceny of the automobile. I do that in accordance with the evidence that I have heard, and upon the request of the accused, who elected to change his plea with the advice of counsel. And, suffice it to say, at this point, that I have conducted the canvass and I am satisfied that the plea is intelligently and legally entered, and, therefore, would not be any longer your concern. It is mine. So that the only thing remaining for you are the first and second counts of this complaint. And they, the state has elected to charge this accused with a two count information, now that the third count is gone, and there will be a new [information] just indicating the two counts, and they charged robbery in the first degree, and I will explain that to you, what that offense is, when the time comes, and then the second count they have charged larceny in the first degree."

During final instructions, the court stated: "Let me explain to you, as well, that the fact that he has pleaded guilty to the other charge is independent and distinctive from the first two. You wouldn't convict him of the third, because you felt he committed the first two. You wouldn't convict of the first or second, because he has pleaded guilty to the third. I told you that is what happened, to remove it from your consideration as unnecessary at this juncture. But you will consider the proof concerning that taking, and concerning the possession, and what occurred as proof in connection with the robbery in the first degree and larceny that you heard here before you. So it's not as though any part of that is barred from your consideration." At no time did the defendant object to either instruction, nor did he request a mistrial.

The defendant argues that the initial instruction was improper because his guilty plea was not in evidence,

was incriminating and was not harmless, in that it denied him the right to a fair trial. We do not agree.

It is obvious from the record before us that the defendant's plea of guilty to the charge involving the larceny of the automobile was a defense strategy designed to obtain an acquittal of the bank robbery and larceny charges. Without admitting guilt to the stolen car charge, he could not explain being in the car, the chase, and his flight and apprehension as part of the "bad day" defense.[3] The crux of his counsel's final argu-

---

[3] Counsel for the defendant argued during closing arguments: "Why did this defendant just plead guilty to possession of that car? One of two things, he either took it from Mr. Maran, who owned the vehicle, which David Sierras says is not the case, or he stole it while it was running in the middle of PT Barnum, in which case he is not entitled to either. And talk about having a bad day, let's assume for sake of argument that he did come out of the building, which evidence seems to indicate that he did, and he bought some drugs and walks out, there is a car motor running, well, you know, like I just found the mother lode. He is getting out of here, he is going to take the car. The motor is running, the ignition is punched, he knows it's stolen. He is gone. Of course, I'm sure he had the full spectrum of emotions because he thought he had made his score, and within a hundred yards he finds out there is all kinds of cops.

"Why is this important? It's important to you not because the state says ah, yes, this was the car used in the bank robbery, the most significant piece of evidence, I think, is that what [the] state objected to in your presence, which subsequently was admitted before you. What is the first thing that this defendant says when the police pull him out of the—or he walks out of the attic or fell through the ceiling, I don't know how he got out of the attic, something along these lines of 'All these cops for a stolen car? I was going to take [the car] on a joy ride.'

"The significance to this is that unless we are dealing with a person who is so alert to what the elements of the crime have to be, and how they are connected and so forth and so on, it would seem that his statement to the police officer is the natural statement. I think this is significant, because one learns you can steal from a thief, if you believe that story, it's a violation of law which would not be related to, in any respect, the bank robbery that occurred in Fairfield.

"Talk about having a bad day, not only does he steal a car from a thief, he steals a car from a thief who just used it in a bank robbery. Does that mean he was at the bank robbery? I believe that is the leap of faith and the inference being asked of you by the state, and in fact in order to—in order to—convict this defendant, that is the leap of faith you are going to have to make. That is the leap of faith."

ment can be summed up by one statement made by defense counsel in closing argument. "Talk about having a bad day, not only does he steal a car from a thief, he steals a car from a thief who just used it in a bank robbery."

We agree that evidence of a codefendant's guilty plea may be improper to establish that the crime was committed; *State* v. *Pikul*, 150 Conn. 195, 198, 187 A.2d 442 (1962); but here, the defendant's own plea to one count of a three count information, accepted after the jury had heard all the evidence, made the trial court's initial instruction proper to remove that one count from their consideration. We cannot discern that the defendant was irreparably prejudiced by the trial court's announcement of the guilty plea. The trial court expressed proper cautionary instructions. "The jury [is] presumed to follow the court's directions in the absence of a clear indication to the contrary." *State* v. *Griffin*, 175 Conn. 155, 160, 397 A.2d 89 (1978).

The defendant next claims that the trial court improperly denied his motion to withdraw his guilty plea. He claims that the plea was entered without a full understanding of the nature of the charge, that he did not understand that the charge required that he knew or believed that the car probably was stolen, and that other procedural defects in the plea litany existed. We have reviewed the record and observe that following the defense's case the defendant asked to plead guilty to theft of the automobile and explained that he had entered and driven a car, knowing it to be stolen. During the plea canvass, the defendant stated: "I pleaded guilty because I know I'm guilty. It was a stolen car." He presented evidence during the trial sufficient to demonstrate that he actually stole the car. He thereafter entered his plea of guilty and now complains that there is nothing in the record to indicate that he understood that the charge required that he knew or believed that

the car probably was stolen. We reject this claim and construe it to be made as a result of a trial strategy that did not produce a desired result.[4]

The record is also clear that the defendant was aware of his right against self-incrimination, and exercised that right to remain silent by choosing not to testify. Under the particular circumstances of this case, where the defendant has already exercised his right to a jury trial, his right to confront witnesses and his right against self-incrimination, we cannot conclude that the trial court abused its discretion in denying the defendant's request to withdraw his plea, and that the plea was not knowingly, voluntarily and intelligently made.[5]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] Defense counsel stated, prior to sentencing: "The impact and the interplay between the larceny three which it was concluded at least during the trial, it was a strategic move has been looked upon as something not very good strategy in view of the ultimate conclusion."

[5] Having "lived" his rights during the trial, the defendant cannot be viewed as being unaware of those rights. A plea itself, under these circumstances, acts as the waiver.